FILED
May 24, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003514630

6

J. RUSSELL CUNNINGHAM, State Bar #130578
J. LUKE HENDRIX, State Bar #271424
DAVID R. WIKSELL, State Bar #272490
**DESMOND, NOLAN, LIVAICH & CUNNINGHAM**
1830 15th Street
Sacramento, California 95811
Telephone: (916) 443-2051
Facsimile: (916) 443-2651

Attorneys for J. Michael Hopper
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:

GINA COOPER

    Debtor.

Case No. 10-32967-C-7
Chapter 7

DNL-6

Date: June 21, 2011
Time: 9:30 a.m.
Place: Dept. C, Courtroom 35
501 I Street, 6th Floor
Sacramento, CA. 95814

## MOTION TO APPROVE ORCHARD CROSSING COMPROMISE

J. MICHAEL HOPPER ("Trustee") hereby moves for approval of his compromise with GINA COOPER ("Debtor"), ORCHARD CROSSING APARTMENTS, L.P., a California limited partnership ("OCA Partnership"), and ORCHARD CROSSING APARTMENTS, INC. ("OCA, Inc."). In support thereof, it is represented that:

### INTRODUCTION

1.     The Debtor commenced this case by filing a voluntary Chapter 7 petition on May 17, 2010. Trustee is the duly appointed trustee for the Debtor's Chapter 7 bankruptcy estate.

2.     The Debtor's estate includes a 99.999% limited partnership interest in OCA Partnership, the sole general partner of which is OCA, Inc. The principal asset of OCA Partnership

1

is the real property and residential apartment rental business commonly known as Orchard Crossing Apartments, 651 E. Travis Blvd., Fairfield, Solano County AP# 0032-220-030.

3. Trustee, the Debtor, OCA Partnership and OCA, Inc. have the following disputes: (a) MET-1, the Debtor's motion to compel abandonment of certain assets, including OCA Partnership and Orchard Crossing Apartments; (b) DNL-2, Trustee's motion for turnover of the property interests that are the subject of MET-1; and (c) Adversary Proceeding #11-02018 in which Trustee seeks to avoid under State law related transfers to Mardee Smith and OCA Partnership on July 13, 2006, and ceding of ultimate right of management and control over OCA Partnership to OCA, Inc. on December 8, 2006 and December 27, 2007 (the "Transfers").

## THE COMPROMISE

4. Subject to bankruptcy court approval, Trustee and the Debtor, OCA Partnership and OCA, Inc. have entered in the following compromise:

(a) <u>Conditions</u>. The settlement is conditioned on entry of final orders: (a) approving the compromise and authorizing Trustee to enter into and carry out the terms of the settlement (the "Approval Order"); and (b) dismissing MET-1, DNL-2, and Adversary Proceeding #11-02018, with prejudice (the "Dismissal Orders"). The effective date of the settlement shall be the later of entry of the final Approval Order and Dismissal Orders.

(b) <u>Payment of Settlement Funds</u>. OCA Partnership shall pay the Trustee $84,500 (the "Settlement Funds") as follows: (a) $80,000 deposit upon signing; and (b) $4,500 on or before the 30th calendar day following entry of the latter of the Approval Order and the Dismissal Orders (the "Effective Date")

(c) <u>Release</u>. Excepting only the rights and obligations created by the Agreement, the Trustee, on the one hand, and the Debtor, OCA Partnership, and OCA, Inc., on the other hand, will forever release and discharge one another, from all claims arising out of or related to the subject matter of MET-1, DNL-2, and the Transfers. Trustee's release shall apply to all scheduled property of the Debtor's bankruptcy estate, except for: (a) all rights related to the $150,000 scheduled claim against RTI; and (b) all rights, including indemnity and contribution, related to $3,400,000 scheduled obligation to United American Bank ("UAB"). The release by Trustee shall not include unscheduled

assets and the Debtor's related duties arising under 11 U.S.C. Section 521. The release by the Debtor shall apply to all of the estate property that is the subject of MET-1, DNL-2 and the Transfers, except for the Settlement Funds, RTI claim, UAB rights, and unscheduled assets, if any.

## THE MOTION TO COMPEL ABANDONMENT

5. MET-1 is the Debtor's motion to compel abandonment of the estate's interest in a 99.999% limited partnership interest in OCA Partnership, the owner of a 100-unit apartment complex at 651 E. Travis Blvd., Fairfield, California. The remaining 0.001% OCA Partnership interest is held by its managing partner, OCA, Inc. OCA, Inc. is a non-profit corporation with its own officers and directors. Since 2007, OCA, Inc. has successfully operated the OCA Partnership's business, tending to the needs of the property and tenants, while generating profits of at least $8,500 per month to the debtor. While Trustee and the Debtor disagree as to the current fair market value of the apartment complex, $8 million vs. $6 million, they share the same intended use for the OCA Partnership interest, i.e. holding same until a $1.3 million pre-payment penalty on a $5.5 million note secured by a first trust deed is waived or expires per contract in 2016. To that end, Trustee turned down a $10,000 offer to purchase the estate's interest subject to competing claims of interest. The Debtor's July 3, 2010 amended Schedules B and C concede that $23,750 post-petition distributions on account of the partnership interest exceed by $12,000 a $11,750 amended claimed exemption.

## THE 2004 FAMILY LAW JUDGMENT

6. On June 5, 2003, for a purchase price of $6.9 million, the debtor and her then spouse, Patrick Hutchinson, acquired as joint tenants all right title and interest in the real property and business then known as the Stoneybrook Apartments, 651 E. Travis Blvd., Fairfield, California. The purchase was funded by an Internal Revenue Code Section 1031 exchange. Trustee and the Debtor dispute the bankruptcy estate's current tax basis in the Stoneybrook Apartments.

7. On November 10, 2004, in Solano County Superior Court case #FFL080541, a judgment was entered ratifying an October 18, 2004 Interspousal Transfer Deed by which Patrick

3

Hutchinson conveyed to the debtor as her sole and separate property the Stoneybrook Apartments. The judgment provided in part that:

> "Wife agrees that in the event she sells the real property and business interest known as the Stoneybrook Apartments, Husband shall, upon close of escrow, be entitled to payment of one-half of the net proceeds of sale of the property, or one-half of the community equity of the property as of the date of the execution of this Agreement, whichever is less."

8. In the schedule of assets attached to the judgment, the parties estimated the value of the Stoneybrook Apartments to be $8.6 million, subject to secured debt aggregating $5.6 million. Accordingly, one-half of the $3.0 million community equity as of the date of the agreement was $1.5 million. Trustee and the Debtor dispute the impact this obligation would have on the tax consequences of a sale of the Stoneybrook Apartments to a third-party, now and in the future.

### THE 2006 GRANT DEEDS

9. On July 13, 2006, by Grant Deed, the Debtor gifted a series of fractional interest transfers, including a transfer to her mother, Mardee Smith, that resulted in the current ownership structure of OCA Partnership. As part of that transaction: (a) the Debtor and Mardee Smith, but not Patrick Hutchinson, received interests in the OCA Partnership; and (b) OCA Partnership re-financed the secured debt against the Stoneybrook Apartments. This transfer of the Stoneybrook Apartments was effected without the knowledge and consent of Patrick Hutchinson, who also did not receive any portion of the sale proceeds or interest in OCA Partnership.

10 The Debtor subsequently ceded her right of control of the OCA Partnership without the knowledge and consent of Patrick Hutchinson, for the apparent purpose of evading her obligations under the judgment. Despite being entitled to the lesser of $1.5 million and one-half of the OCA Partnership interest the Debtor received in return for contributing the Stoneybrook Apartments, Patrick Hutchinson received neither.

### SECURED DEBT AGAINST THE ORCHARD CROSSING APARTMENTS

11. In her May 17, 2010 Schedule D, the Debtor estimated the current balances due on claims secured by the Orchard Crossing Apartments as follows:

///

4

| Claimant | Schedule D |
|---|---|
| Berkadia Commercial Mortgage | $5,460,159 |
| City of Fairfield | 550,000 |
| Solano County Tax Collector | 255,000 |
| Total | $6,265,159 |

12. Berkadia is the successor to the lender that funded OCA Partnership's 2006 refinance of Orchard Crossing Apartments. The original loan amount was $5.5 million, bearing interest at 6.22% per annum, with monthly payments of $33,757.21 from September 1, 2006 through August 1, 2016, at which time a $4.6 million balloon payment would be due.

13. The Debtor advises that pre-payment rights are restricted such that a sale at this time, i.e. prior to the loan end date, would result in a $1.3 million "defeasance" penalty. For this reason, Trustee and the Debtor share the intention of deferring liquidation of the Orchard Crossing Apartments until the sooner of August 1, 2016 or Berkadia's waiver of the penalty.

## THE COMPETING APPRAISALS

14. John Nicolaou has completed an appraisal of Orchard Crossing Apartments for Trustee. Nicolaou concludes that the value of the property with stabilized occupancy as of September 1, 2010 is $8,200,000, and, accounting for a major repairs allocation in the amount of $100,000, Nicolaou opines that the as is value of the property as of the same date is $8,100,000.

15. Lee Bartholomew has completed an appraisal of Orchard Crossing Apartments for the debtor. In general, Bartholomew uses similar appraisal methodology – income and sales comparison approach. However, Bartholomew has determined fair market value to be substantially less – $5,750,000, or, alternatively, $4,475,000 for what he refers to as the debtor's "leveraged fee interest."

## THE COMPROMISE SHOULD BE APPROVED

In evaluating the fairness, reasonableness and adequacy of the proposed compromise, the court should consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In Re Woodson*, 839

F.2d 610, 620 (9th Cir. 1988), citing *In Re A & C Properties*, 784 F.2d 1377, 1381, cert. denied 107 S. Ct. 189 (1986).

1. <u>The probable success in the litigation.</u>

This factor weighs in favor of the compromise. The current fair market value, liquidation tax consequences, and prospects of positive cash flow pending expiration of the pre-payment penalty, are heavily disputed.

2. <u>The difficulties to be encountered in collection.</u>

This factor weighs in favor of the compromise. Unless the transfers are avoided, there is no automatic stay to protect the Stoneybrook Apartments from default and foreclosure.

3. <u>The complexity of the litigation involved.</u>

This factor weighs in favor of the compromise. The litigation would be complicated, expensive, or time consuming.

4. <u>The paramount interest of the creditors.</u>

This factor weighs in favor of the compromise. Resolution of the dispute will substantially shorten the time that the holders of allowed claims will have to wait for a distribution.

WHEREFORE, Trustee respectfully requests that the Court approve the compromise as prayed.

Dated: May 24, 2011

DESMOND, NOLAN, LIVAICH & CUNNINGHAM

By: _____

J. RUSSELL CUNNINGHAM
Attorneys for J. Michael Hopper,
Chapter 7 Trustee